**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By: John C. Atkin, Esq.
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>JOHN DOE subscriber assigned IP address 173.63.123.216,<br><br>               Defendant. | Case No. 2:21-cv-15651-KSH-LDW<br><br>**MOTION RETURN DATE:**<br>**June 6, 2022**<br><br>*Document Filed Electronically* |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT FEDERAL RULE OF CIVIL PROCEDURE 55(b)

---

Of Counsel and on the Brief:
    John C. Atkin, Esq.

# **TABLE OF CONTENTS**

LEGAL ARGUMENT ........................................................................1

I.    SUBJECT MATTER & PERSONAL JURISDICTION.................................1

II.    PREREQUISITES FOR DEFAULT JUDGMENT .......................................1

III.    THE WELL-PLEADED FACTS OF THE FIRST AMENDED COMPLAINT ESTABLISH DEFENDANT'S LIABILITY .............................1

IV.    PLAINTIFF HAS SPECIFICALLY IDENTIFIED DEFENDANT AS THE INFRINGER ..................................................................................9

V.    THE *CHAMBERLAIN* FACTORS FAVOR DEFAULT JUDGMENT .....17

VI.    PLAINTIFF IS ENTITLED TO APPROPRIATE RELIEF ......................23

    A.    Permanent Injunctive Relief.....................................................23

    B.    Minimum Statutory Damages Per Infringed Work.................................25

    C.    Statutory Filing Fee and Service Costs. .................................26

VII.    THE COURT SHOULD UNSEAL DOCUMENTS AND IDENTIFY DEFENDANT IN THE JUDGMENT ................................................27

CONCLUSION .............................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Trustees, N.J. Brewery Trust Fund*,
   29 F.3d 863 (3d Cir. 1994)......................................................................................... 3

*Alston v. Parker*,
   363 F.3d 229 (3d Cir. 2004)....................................................................................... 3

*Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*,
   922 F.2d 168 (3d Cir. 1990)..................................................................................... 18

*Apple Computer, Inc. v. Franklin Computer Corp.*,
   714 F.2d 1240 (3d Cir. 1983)................................................................................... 25

*Atl. Recording Corp. v. Pancrazio*,
   No. 06-5572, 2007 WL 3036744 (D.N.J. Oct. 16, 2007) ......................................... 18

*Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*,
   555 F. Supp. 2d 537 (E.D. Pa. 2008) ...................................................................... 24

*Budget Blinds, Inc. v. White*,
   536 F.3d 244 (3d Cir. 2008)....................................................................................... 2

*Burroughs v. Metro-Goldwyn-Mayer, Inc.*,
   683 F.2d 610 (2d Cir. 1982)....................................................................................... 7

*Cell Film Holdings, LLC v. Doe*,
   No. 16-2584, 2016 WL 6523432 (S.D. Cal. Nov. 3, 2016) ..................................... 16

*Chamberlain v. Giampapa*,
   210 F.3d 154 (3d Cir. 2000)..................................................................................... 18

*Chanel, Inc. v. Gordashevsky*,
   558 F. Supp. 2d 532 (D.N.J. 2008) ............................................................................ 2

*Chanel, Inc. v. Matos*,
   133 F. Supp. 3d 678 (D.N.J. 2015) ...................................................................... 1, 23

*Clear Skies Nevada, LLC v. Kainu*,
   No. 16-811, 2017 WL 4021121 (D. Or. Aug. 21, 2017) ........................................... 7

*Coach, Inc. v. Bags & Accessories*,
   No. 10-2555, 2011 WL 1882403 (D.N.J. May 17, 2011) ......................................... 20

*Cobbler Nevada LLC v. Gonzalez*,
   901 F.3d 1142 (9th Cir. 2018) ........................................................................... 11, 12

*Comdyne I, Inc. v. Corbin*,
   908 F.2d 1142 (3d Cir. 1990)..................................................................................... 2

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)....................................................................................... 5

*De'Omilia Plastic Surgery, PC v. Sweeton*,
   No. 12-06415, 2013 WL 6070037 (D.N.J. Nov. 18, 2013) ..................................... 19

*Doe v. Megless*,
   654 F.3d 404 (3d Cir. 2011)..................................................................................... 28

*Emcasco Ins. Co. v. Sambrick*,
   834 F.2d 71 (3d Cir. 1987)....................................................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)................................................................................................... 3

*Feliciano v. Reliant Tooling Co.*,
  691 F.2d 653 (3d Cir. 1982) ............................................................... 19

*Floyd v. Black Swan Shipping Co.*,
  No. 98-4207, 2002 WL 1676311 (E.D. Pa. July 18, 2002) ...................... 3

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ........................................................................... 4

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) ................................................. 5, 6, 9, 11

*GP Acoustics, Inc. v. Brandnamez, LLC*,
  No. 10-539, 2010 WL 3271726 (D.N.J. Aug. 17, 2010) ........................ 20

*Gucci Am., Inc. v. Daffy's, Inc.*,
  354 F.3d 228 (3d Cir. 2003) ............................................................... 23

*Harad v. Aetna Cas. & Sur. Co.*,
  839 F.2d 979 (3d Cir. 1988) ............................................................... 21

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) ............................................................................. 7

*Hersey v. Glob. ATM, Inc.*,
  No. 06-2451, 2007 WL 1147056 (D.N.J. Apr. 18, 2007) ...................... 21

*Howard v. Laws*,
  No. 13-957, 2014 WL 3925536 (D.N.J. Aug. 12, 2014) ....................... 24

*Hoxworth v. Blinder, Robinson & Co.*,
  980 F.2d 912 (3d Cir. 1992) ................................................................. 3

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004) ............................................................ 3, 21

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  924 F.3d 662 (3d Cir. 2019) ............................................................... 28

*In re Universal Health Servs., Inc., Derivative Litig.*,
  No. 17-2187, 2018 WL 8758704 (E.D. Pa. Dec. 10, 2018) ................... 20

*Jackson Hewitt, Inc. v. Dupree-Roberts*,
  No. 13-388, 2013 WL 4039021 (D.N.J. Aug. 7, 2013) ......................... 20

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020) ....................................................................... 10

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
  421 F.3d 199 (3d Cir. 2005) ................................................................. 4

*Knoll v. City of Allentown*,
  707 F.3d 406 (3d Cir. 2013) ................................................................. 2

*Lucas v. Duncan*,
  574 F.3d 772 (D.C. Cir. 2009) ............................................................. 8

*Malibu Media, LLC v. Brickhouse*,
  No. 18-3139, 2019 WL 4061754 (E.D. Pa. Aug. 27, 2019) ......... 2, 7, 19

*Malibu Media, LLC v. Cui*,
  No. 13-5897, 2014 WL 5410170 (E.D. Pa. Oct. 24, 2014) .............. 19, 22

*Malibu Media, LLC v. Dhainy*,
  No. 15-3042, 2016 WL 1337275 (D.N.J. Apr. 5, 2016) ........................ 22

*Malibu Media, LLC v. Doe*,
  No. 13-213, 2013 WL 5876192 (E.D. Wis. Oct. 31, 2013) ..................... 7

iv

*Malibu Media, LLC v. Doe,*
No. 15-1042, 2016 WL 4987118 (D. Md. Sept. 15, 2016).............................. 7
*Malibu Media, LLC v. Doe,*
No. 15-3147, 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) ........................ 10
*Malibu Media, LLC v. Doe,*
No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017) .............................. 9
*Malibu Media, LLC v. Doe,*
No. 18-1369, 2020 WL 4719219 (D. Conn. Aug. 13, 2020) ........................ 15
*Malibu Media, LLC v. Doe,*
No. 18-450, 2018 WL 6446404 (N.D. Ill. Dec. 10, 2018)............................ 14
*Malibu Media, LLC v. Doe,*
No. 18-450, 2019 WL 8301066 (N.D. Ill. June 5, 2019).............................. 14
*Malibu Media, LLC v. Duncan,*
No. 19-2314, 2020 WL 567105 (S.D. Tex. Feb. 4, 2020) ............................ 13
*Malibu Media, LLC v. Flanagan,*
No. 13-5890, 2014 WL 2957701 (E.D. Pa. July 1, 2014) ........................ *passim*
*Malibu Media, LLC v. Funderburg,*
No. 13-2614, 2015 WL 1887754 (N.D. Ill. Apr. 24, 2015)............................ 7
*Malibu Media, LLC v. Gilvin,*
No. 13-72, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) ............................. 7
*Malibu Media, LLC v. Mantilla,*
No. 18-1369, 2020 WL 6866678 (D. Conn. Nov. 20, 2020) ........................ 15
*Malibu Media, LLC v. Nowobilski,*
No. 15-2250, 2016 WL 4059651 (D.N.J. July 26, 2016) ................ 20, 21, 22
*Malibu Media, LLC v. Paek,*
No. 13-2766, 2015 WL 779494 (E.D. Pa. Feb. 23, 2015) ............................. 2
*Malibu Media, LLC v. Park,*
No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019) ............................. 15
*Malibu Media, LLC v. Peled,*
No. 18-141, 2020 WL 831072 (D.N.J. Feb. 20, 2020) ................................ 15
*Malibu Media, LLC v. Rahusen,*
No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015)............................. 14
*Malibu Media, LLC v. Ramiscal,*
No. 14-7517, 2016 WL 8698533 (D.N.J. Feb. 19, 2016) ............................ 21
*Malibu Media, LLC v. Tsao,*
No. 15-6672, 2016 WL 3450815 (D.N.J. June 20, 2016)......................... *passim*
*Malibu Media, LLC v. Waller,*
No. 15-3002, 2016 WL 184422 (D.N.J. Jan. 15, 2016)............................... 19
*Nat'l Specialty Ins. Co. v. Papa,*
No. 11-2798, 2012 WL 868944 (D.N.J. Mar. 14, 2012) ............................. 18
*Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,*
175 Fed. Appx. 519 (3d Cir. 2006)............................................... 19, 22, 23
*Patrick Collins, Inc. v. John Doe 1,*
945 F. Supp. 2d 367 (E.D.N.Y. 2013) ......................................................... 7
*Polidoro v. Saluti,*
675 Fed. Appx. 189 (3d Cir. 2017).............................................................. 2

v

*Poulis v. State Farm Fire & Cas. Co.*,
    747 F.2d 863 (3d Cir. 1984)......................................................................... 2
*RingCentral, Inc. v. Nextiva, Inc.*,
    No. 19-2626, 2020 WL 2065701 (N.D. Cal. Apr. 29, 2020) ......................... 4
*Royal Indem. Co. v. Petrozzino*,
    598 F.2d 816 (3d Cir. 1979)......................................................................... 9
*SBO Pictures, Inc. v. Does 1-20*,
    No. 12-3925, 2012 WL 2304253 (S.D.N.Y. June 18, 2012) ....................... 16
*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)................................................................... 3, 21
*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    81 F.2d 49 (2d Cir. 1936)............................................................................ 7
*Slover v. Live Universe, Inc.*,
    No. 08-2645, 2009 WL 606133 (D.N.J. Mar. 9, 2009) .............................. 22
*Strike 3 Holdings, LLC v. Andaya*,
    No. 21-760, 2021 WL 5123643 (N.D. Cal. Nov. 4, 2021) .......................... 15
*Strike 3 Holdings, LLC v. Doe*,
    337 F. Supp. 3d 246 (W.D.N.Y. 2018). ........................................................ 4
*Strike 3 Holdings, LLC v. Doe*,
    370 F. Supp. 3d 478 (E.D. Pa. 2019) ......................................................... 13
*Strike 3 Holdings, LLC v. Doe*,
    964 F.3d 1203 (D.C. Cir. 2020) ................................................. 11, 12, 16
*Strike 3 Holdings, LLC v. Doe*,
    No. 17-1731, 2020 WL 531996 (W.D. Wash. Feb. 3, 2020)......................... 6
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-1173, 2019 WL 1277561 (N.D. Cal. Mar. 20, 2019) ...................... 24
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020)............... 3, 4, 8, 9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-12605, D.E. 17 (D.N.J. May 14, 2019)........................................... 15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-16593, 2019 WL 4745360 (D.N.J. Sept. 30, 2019) ........................ 13
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019)................... 10, 11
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-4993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ........................... 10
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-10252, 2020 WL 5525549 (D.N.J. Sept. 14, 2020) ........................ 13
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ......................... 10
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-2552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) .......................... 10
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-396, 2020 WL 917090 (D. Md. Feb. 25, 2020) ................................ 9
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-723, 2019 WL 2996428 (N.D. Cal. July 9, 2019) ........................... 12

*Strike 3 Holdings, LLC v. Doe*,
   No. 20-14321, 2021 WL 7286225 (D.N.J. Dec. 22, 2021).....................................27
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-14329, D.E. 28 (D.N.J. Dec. 17, 2021)...........................................15
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-20170, D.E. 6 (D.N.J. Apr. 20, 2021)............................................27
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-960, D.E. 39 (E.D. Va. June 21, 2021) ..........................................14
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-1661 (E.D.N.Y. Jan. 19, 2022) ...................................................6
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-3702, 2022 WL 1214170 (E.D. Pa. Apr. 25, 2022)..................................27
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-3702, D.E. 29 (E.D. Pa. Apr. 22, 2022)..........................................14
*Strike 3 Holdings, LLC v. Gray*,
   No. 20-5122, 2022 WL 952728 (E.D. Pa. Mar. 30, 2022) ........................... 15, 23, 25
*Strike 3 Holdings, LLC v. Gray*,
   No. 20-5122, D.E. 24, 25 (E.D. Pa. Apr. 6, 2022).......................................28
*Strike 3 Holdings, LLC v. Poluk*,
   No. 20-2146, 2021 WL 5321824 (E.D. Cal. Nov. 16, 2021).................................15
*Strike 3 Holdings, LLC v. Vokoun*,
   No. 20-14321, 2022 WL 310201 (D.N.J. Feb. 2, 2022) ..............................*passim*
*Strike 3 Holdings, LLC v. Wise*,
   No. 20-942, 2022 WL 393594 (C.D. Cal. Feb. 7, 2022)...................................15
*Sweda v. Univ. of Penn.*,
   923 F.3d 320 (3d Cir. 2019)..............................................................3
*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019)...........................................................25
*Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*,
   No. 11-624, 2011 WL 4729023 (D.N.J. Oct. 5, 2011) ...................................19
*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)...........................................................16
*U.S. v. $55,518.05 in U.S. Currency*,
   728 F.2d 192 (3d Cir. 1984)...........................................................21
*U.S. Postal Serv. Bd. of Governors v. Aikens*,
   460 U.S. 711 (1983)....................................................................8
*U.S. v. Richardson*,
   No. 11-3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012).....................................16
*U.S. v. Tillotson*,
   No. 08-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) .................................16
*U.S. v. Vo*,
   No. 15-6327, 2016 WL 475313 (D.N.J. Feb. 8, 2016) ................................18, 19
*Virgin Records Am., Inc. v. Bagan*,
   No. 08-4694, 2009 WL 2170153 (D.N.J. July 21, 2009) ................................23
*Virgin Recs. Am., Inc. v. Bagan*,
   No. 08-4694, 2009 WL 2170153 (D.N.J. July 21, 2009) ................................25

*Wahab v. New Jersey Dep't of Env't Prot.*,
   No. 12-6613, 2017 WL 4790387 (D.N.J. Oct. 24, 2017) ...................................... 18
*Warner Bros. Records Inc. v. Gullfoyle*,
   No. 06-1238, 2007 WL 835421 (D.N.J. Mar. 14, 2007) ...................................... 26
*Warner Bros. Records Inc. v. Novak*,
   No. 06-5342, 2007 WL 1381748 (D.N.J. May 9, 2007)...................................... 26
*Zawadski de Bueno v. Bueno Castro*,
   822 F.2d 416 (3d Cir. 1987)................................................................................... 2

**Statutes**

17 U.S.C. § 106 .................................................................................................................... 4
17 U.S.C. § 412 .................................................................................................................. 25
17 U.S.C. § 501 .................................................................................................................... 1
17 U.S.C. § 502 .................................................................................................................. 23
17 U.S.C. § 503 .................................................................................................................. 25
17 U.S.C. § 504 .................................................................................................................. 25
17 U.S.C. § 505 .................................................................................................................. 26
28 U.S.C. § 1331 .................................................................................................................. 1
28 U.S.C. § 1338 .................................................................................................................. 1

**Rules**

Fed. R. Civ. P. 4 .................................................................................................................. 1
Fed. R. Civ. P. 10 .............................................................................................................. 27
Fed. R. Civ. P. 12 ................................................................................................................ 1
Fed. R. Civ. P. 55 ...................................................................................................... 1, 3, 15
L. Civ. R. 5.3...................................................................................................................... 27

Plaintiff Strike 3 Holdings, LLC ("Plaintiff") submits this Memorandum of Law in support of its Motion for Default Judgment against Defendant John Doe subscriber assigned IP address 173.63.123.216 ("Defendant"), pursuant to Fed. R. Civ. P. 55(b).  The pertinent facts are set forth in the Certification of John C. Atkin, Esq. dated May 6, 2022 ("Atkin Cert."), which is incorporated by reference.

## LEGAL ARGUMENT

## I.   SUBJECT MATTER & PERSONAL JURISDICTION

This Court has subject matter jurisdiction over this matter because it arises under the Copyright Act.  *See* 17 U.S.C. § 501; 28 U.S.C. §§ 1331, 1338.  Personal jurisdiction is proper because Defendant is domiciled in New Jersey, *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015), and was served with process in New Jersey.  Fed. R. Civ. P. 4(k)(1)(A); *see* D.E. 12 & 13.

## II.   PREREQUISITES FOR DEFAULT JUDGMENT

On January 13, 2022, Plaintiff served Defendant with the Summons and First Amended Complaint.  *See* D.E. 12 & 13.  Defendant failed to timely respond to the First Amended Complaint.  Fed. R. Civ. P. 12(a).  On April 21, 2022, the Clerk of the Court entered default on the docket, pursuant to Fed. R. Civ. P. 55(a).

## III.   THE WELL-PLEADED FACTS OF THE FIRST AMENDED COMPLAINT ESTABLISH DEFENDANT'S LIABILITY

In considering a motion for a default judgment, a court must "accept as true the well-pleaded factual allegations of the complaint, but the court need not accept

1

the moving party's legal conclusions or allegations relating to the amount of damages." *Polidoro v. Saluti*, 675 Fed. Appx. 189, 190 (3d Cir. 2017); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). "The Court also accepts all reasonable inferences that can be drawn from the complaint." *Malibu Media, LLC v. Brickhouse*, No. 18-3139, 2019 WL 4061754, at *1 (E.D. Pa. Aug. 27, 2019). While "in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits," *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987), the Court "cannot apply this presumption against default judgments if doing so would be inconsistent with the Federal Rules of Civil Procedure or . . . case law interpreting these Rules." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008).

Importantly, when analyzing the merits of Plaintiff's claim on a motion for default judgment, the Court should "not purport to use summary judgment standards," but instead must determine if the "allegations of the pleadings, if established at trial, would support recovery by plaintiff[.]" *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869–70 (3d Cir. 1984); *see generally Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990)); *Malibu Media, LLC v. Paek*, No. 13-2766, 2015 WL 779494, at *2 (E.D. Pa. Feb. 23, 2015). This distinction is crucial because, while the Court may hold a hearing to establish the truth of any allegation, Fed. R. Civ. P.

2

55(b)(2)(C), by defaulting, Defendant is depriving Plaintiff of discovery to obtain evidence in Defendant's possession. *See Floyd v. Black Swan Shipping Co.*, No. 98-4207, 2002 WL 1676311, at \*1 (E.D. Pa. July 18, 2002) (citing *Adams v. Trustees, N.J. Brewery Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994)); *see also Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof.'"); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 920–21 (3d Cir. 1992).

Plaintiff's burden is to allege facts that allow the Court to draw the reasonable inference that Defendant is liable for copyright infringement. *See Sweda v. Univ. of Penn.*, 923 F.3d 320, 325–26 (3d Cir. 2019). The elements of copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at \*5 (D.N.J. June 30, 2020). "[A] plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense" to state a *prima facie* claim. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004)). "[C]opyright infringement may be considered willful when a Defendant defaults and decides not to defend against the action." *Malibu Media, LLC v. Tsao*, No. 15-6672, 2016 WL 3450815, at \*3 (D.N.J. June 20, 2016).

First, Plaintiff owns valid copyrights for each of the 25 works at issue, which were duly registered with the Copyright Office at the time suit was filed.[1]  D.E. 8 & 9 at ¶¶ 2, 42, 45, 57; D.E. 8-1 & 9-1 (listing registration and publication information for each work); *see Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019).

Second, Plaintiff alleges Defendant[2] copied constituent elements of its original works.  D.E. 8 & 9 at ¶¶ 4, 27–44, 58; *see Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) ("Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106[.]").  To advance this allegation across the line from a legal

---

[1] Plaintiff deliberately did not identify the works-in-suit by title (which are sometimes ribald in nature) in a showing of good faith to avoid potentially embarrassing the defendant and out of respect for court personnel.  Instead, Plaintiff has identified the works by each work's copyright registration information, from which a defendant can look up each work's "official" name on the U.S. Copyright Office's database.  *See Strike 3*, 2020 WL 3567282 at *5; *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 253–54 (W.D.N.Y. 2018).  In addition, each work is identified by the "Info Hash" value used to obtain the infringing file pieces, which a defendant can look up on an Internet search engine to see the exact ".torrent" files that he or she used, because infringing copies might not use the official names of the copyrighted works.

[2] As discussed in more detail in Sec. IV, *infra*, Plaintiff has also identified Defendant as the infringer, beyond his mere association with the IP address. D.E. 8 & 9 at ¶¶ 47–55; *Strike 3 Holdings, LLC v. Vokoun*, No. 20-14321, 2022 WL 310201, at *3 (D.N.J. Feb. 2, 2022); *see also RingCentral, Inc. v. Nextiva, Inc.*, No. 19-2626, 2020 WL 2065701, at *2 (N.D. Cal. Apr. 29, 2020).

conclusion to one of "historical fact," *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016), Plaintiff included the following allegations.

BitTorrent is a communication protocol for peer-to-peer ("P2P") file sharing that enables users to download and distribute files in a decentralized manner. *See* D.E. 8 & 9 at ¶¶ 17–26.

> One type of peer-to-peer networking involves the BitTorrent protocol, in which a file is broken up into smaller pieces from various peers and then reassembled upon completion of a download. With BitTorrent, each user is both downloading and uploading several different pieces of a file from and to multiple other users. Peer-to-peer networks like BitTorrent are ideally suited for sharing large files, a feature that has led to their adoption by, among others, those wanting access to pirated media, including music, movies, and television shows.

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035 (9th Cir. 2018) (citation omitted). The key is that an individual who uses BitTorrent to download a file does not obtain the entire file from a single source. D.E. 8 & 9 at ¶¶ 17–26. Rather, the file is chopped into pieces and downloaded from (and then distributed to) many peers (*i.e.*, the "BitTorrent Swarm"). *See id.*

A person who wants to obtain a copy of a movie using BitTorrent will (1) obtain a ".torrent" file, which contains the instructions (*i.e.*, an "Info Hash" value) to find, download, and reassemble the pieces of the movie file, much like a jigsaw puzzle, and (2) use that ".torrent" file to download the movie file in pieces from other peers in the BitTorrent Swarm and reassemble the pieces of the movie file into its original form, "ready for playing." *See id.* at ¶¶ 19–26. By using the ".torrent

file" to download file pieces, that person also becomes a part of the BitTorrent Swarm and uploads (*i.e.*, distributes) the file pieces to other peers. *See id.* at ¶¶ 17–18; *Glacier Films*, 896 F.3d at 1035 ("With BitTorrent, 'each user is both downloading and uploading different pieces of a file from and to multiple other users.'") (citation omitted).

   VXN Scan collected evidence in this matter by (1) identifying ".torrent" files that download and distribute unauthorized copies of Plaintiff's works, D.E. 8 & 9 at ¶¶ 32–35; *see also* D.E. 3-2 at ¶¶ 43–51; D.E. 3-4 at ¶¶ 7–11; and (2) using those ".torrent" files to download file pieces of the infringing movie files that were uploaded by Defendant,[3] which were then recorded in PCAPs ("packet capture"). D.E. 8 & 9 at ¶¶ 27–44, 58; *see also* D.E. 3-2 at ¶¶ 52–70. Unlike Defendant's BitTorrent program, however, VXN Scan is incapable of uploading the file pieces to other users. D.E. 8 & 9 at ¶ 36; *see also* D.E. 3-2 at ¶ 49.

   These allegations allow the Court to draw the reasonable inference that

---

[3] One court has incorrectly found that Plaintiff's pre-suit evidence only shows that the defendant possesses ".torrent" files, but not pieces of the infringing works, because in that matter Plaintiff had identified the infringing files by the "Info Hash" values used to obtain their pieces, rather than their "File Hash" values. *Strike 3 Holdings, LLC v. Doe*, No. 17-1731, 2020 WL 531996, at *5 (W.D. Wash. Feb. 3, 2020), *aff'd on other grounds*, 849 Fed. Appx. 183 (9th Cir. 2021). Importantly, that matter did not involve VXN Scan and Plaintiff has revised its filings to identify both hash values to resolve the ambiguity that led to that error. *See Strike 3 Holdings, LLC v. Doe*, No. 21-1661 (E.D.N.Y. Jan. 19, 2022) (Brown, J.) (discharging Order to Show Cause and allowing matter to proceed after questioning whether to dismiss claim based on the Western District of Washington's decision).

Defendant has copied "constituent elements" of 25 Plaintiff's copyrighted works.

*See* D.E. 8 & 9 at ¶¶ 43, 58; *Brickhouse*, 2019 WL 4061754, at *1.

> Because BitTorrent's purpose is to help a user collect bits that make a complete file viewable, the Court infers that by exchanging bits of Plaintiff's copyrighted movies, the user eventually compiled complete copies of the works. Even if the user didn't compile complete copies, he plausibly infringed Plaintiff's copyrights by copying "constituent elements" of those works.[4]

*Malibu Media, LLC v. Funderburg*, No. 13-2614, 2015 WL 1887754, at *2 (N.D. Ill. Apr. 24, 2015) (granting default judgment); *see also Malibu Media, LLC v. Doe*, No. 15-1042, 2016 WL 4987118, at *2 (D. Md. Sept. 15, 2016); *Malibu Media, LLC v. Gilvin*, No. 13-72, 2014 WL 1260110, at *2 (N.D. Ind. Mar. 26, 2014); *Malibu Media, LLC v. Doe*, No. 13-213, 2013 WL 5876192, at *2 (E.D. Wis. Oct. 31, 2013); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 377 (E.D.N.Y. 2013). "'Inferences'—which are commonly described as 'circumstantial evidence'—are as capable of providing evidentiary support as 'facts'—which are commonly described

---

[4] Setting aside that Defendant's default is preventing Plaintiff from conducting discovery of evidence in Defendant's possession, it is not a meritorious defense for an infringer to argue he only downloaded *some* of a copyrighted work. "As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564–65 (1985) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)); *see Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 624 n.14 (2d Cir. 1982) ("[A] copyright infringement may occur by reason of a substantial similarity that involves only a small portion of each work."); *Clear Skies Nevada, LLC v. Kainu*, No. 16-811, 2017 WL 4021121, at *7 (D. Or. Aug. 21, 2017), *report and rec. adopted*, 2017 WL 4012960 (D. Or. Sept. 12, 2017).

as 'direct evidence.'" *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009) (citations omitted); *see U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence.").

Accordingly, Plaintiff has "quite clearly" and "unmistakably" alleged the necessary elements—ownership of valid copyrights and copying of constituent elements of its original works—to state a claim for copyright infringement. *Strike 3*, 2020 WL 3567282 at *5–6.

Finally, Defendant's infringement was willful because he failed to appear in this action, despite being served with process. *Tsao*, 2016 WL 3450815, at *3. Defendant's infringement was also willful because his "use of the BitTorrent protocol to download Plaintiff's copyrighted video allowed Defendant to have free access to a film that he would otherwise have to pay for." *Malibu Media, LLC v. Flanagan*, No. 13-5890, 2014 WL 2957701, at *2 n.4 (E.D. Pa. July 1, 2014). Indeed, Defendant did not just *download* 25 of Plaintiff's movies without paying for them, he is also *distributing* 25 of Plaintiff's movies *via* the BitTorrent protocol for free to others, thereby enabling the infringement of others. D.E. 8 & 9 at ¶¶ 4, 28– 44, 58–61. "This is not a case of the infringer creating something new and incorporating a copyrighted element into that new, creative work. Rather, this case is the digital equivalent of standing outside the neighborhood Redbox—or

Blockbuster Video, for fans of history—and giving away copies of the movie for free." *Glacier Films*, 896 F.3d at 1041 (citation omitted).

## IV.    PLAINTIFF HAS SPECIFICALLY IDENTIFIED DEFENDANT AS THE INFRINGER

This lawsuit—like all suits involving Internet piracy—began by Plaintiff stating a *prima facie* claim of copyright infringement against a placeholder defendant.  *See Strike 3*, 2020 WL 3567282 at *5–7; *see also Royal Indem. Co. v. Petrozzino*, 598 F.2d 816, 818 (3d Cir. 1979) ("When a plaintiff is aware of an actionable claim but does not know the identity of a defendant, an action may be commenced against John Doe.").  Plaintiff identified the anonymous subscriber as the Doe defendant based on the well-recognized and reasonable inference that— before early discovery provides the subscriber's identity—"[i]t is plausible that files downloaded using a particular IP address were downloaded by the subscriber of that address," and "[t]he possibility that a family member, guest, or neighbor may have downloaded the Works does not render Plaintiff's claims implausible." *Malibu Media, LLC v. Doe*, No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017); *see Strike 3 Holdings, LLC v. Doe*, No. 19-396, 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (Grimm, J.) ("[I]t takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address.").

9

The reasonable inference that the infringer using an IP address is its subscriber is akin to the "commonsense inference" that the driver of a vehicle is its owner, which was recently recognized by the Supreme Court in *Kansas v. Glover*, 140 S. Ct. 1183, 1186–91 (2020).  But, like all inferences, "the presence of additional facts," or the revelation of new facts, "might dispel" the reasonableness of the initial inference. *Id.* at 1191. For example, in *Glover*, the Court hypothesized that additional facts could be discovered that conflicted with the inference that the driver of a truck was also the owner, such as a disparity between the age of the registered owner and observed age of the driver, or other "exculpatory information  . . . sufficient . . . to rebut the reasonable inference."  *Id.*

In the context of lawsuits concerning Internet piracy, those additional facts are discovered after a court authorizes a subpoena to be served on the Internet Service Provider ("ISP") to produce the anonymous subscriber's name and address in so-called "early" discovery (*i.e.*, prior to a Rule 26 conference).[5]  As the Ninth Circuit

---

[5] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-2552, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019) (identifying subscriber is a "necessary step" to determine proper defendant) (citation omitted); *Strike 3 Holdings, LLC v. Doe*, No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019) ("[W]hile the subscriber is not necessarily the infringer, the only party that Plaintiff knows of with continuous access to the IP address is the subscriber defendant. Thus, Plaintiff needs the subscriber information to conduct a good faith investigation."); *Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, at *5 (E.D. Cal. Feb. 26, 2019) ("The whole purpose of the targeted discovery here is to allow plaintiff to determine whether it can obtain the identity of the proper defendant."); *Strike 3 Holdings, LLC v. Doe*, No. 18-4993, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019).

noted in *Glacier Films*, "allow[ing] copyright holders to seek limited discovery from an ISP to establish a potential infringer's identity" in BitTorrent suits is "practical" and "sensible."[6]   *Glacier Films*, 896 F.3d at 1036, 1038 (McKeown, J.).   After a subscriber's identity is discovered, however, the reasonableness of the inference that the subscriber is also the infringer may be re-examined.   *See Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1147 (9th Cir. 2018) (McKeown, J.); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, at *4 (E.D. Cal. Feb. 26, 2019) ("*Cobbler Nevada* did not disturb the Ninth Circuit's decision in *Glacier Films*[.]").

The significance of *Cobbler Nevada* was recently explained by the D.C. Circuit when it comprehensively reversed a "scathing" opinion by the Hon. Royce C. Lamberth, U.S.D.J., which denied leave to conduct early discovery to identify an IP address subscriber in a BitTorrent matter.   *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020), *rev'g*, 351 F. Supp. 3d 160 (D.D.C. 2018).   The D.C. Circuit reversed that decision, which it found to be an "abuse of discretion under any applicable standard," *id.* at 1207 n.2, because the District Court erred "by assigning improper weight to what it viewed as the 'aberrantly salacious nature' of Strike 3's

---

[6] In addition, the Ninth Circuit also recognized that BitTorrent suits "fit[] squarely within the tradition of copyright enforcement," were contemplated by Congress, and "deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation." *Id.* at 1038, 1040 (citing *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 500 (1st Cir. 2011)).

films, by concluding that Strike 3 could not state a plausible claim for infringement

against the IP address subscriber, and by drawing unsupported, negative inferences

against Strike 3 regarding its litigation tactics." *Id.* at 1205.  When court-appointed

*amicus* raised *Cobbler Nevada* as supporting the District Court's opinion that

Plaintiff could not state a plausible claim against the subscriber, the D.C. Circuit

explained that that argument was "misplaced":

> In *Cobbler Nevada*, a copyright holder's complaint against an IP address subscriber was dismissed under Rule 12(b)(6)—but only after the plaintiff was permitted to subpoena the defendant's ISP.  Indeed, the district court in *Cobbler Nevada* granted the plaintiff leave not only to issue its subpoena, but to depose the subscriber once he was identified.  This preliminary discovery revealed that the IP address was registered to an individual who operated an adult foster care home where numerous residents and visitors had access to the same Internet service and IP address.  After these facts came to light and the plaintiff failed to plead any additional facts linking the defendant to the alleged infringement, the case was dismissed. Under those circumstances, the Ninth Circuit found, the defendant's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer."

> . . . . To be sure, the requested discovery may ultimately cast doubt on Strike 3's claim against the IP address subscriber.  For example, the subpoenaed records could reveal that the IP address is associated with a coffee shop, a public library, or, as in *Cobbler Nevada*, a residential facility where numerous users access the same Internet service.  At that point, if Strike 3 is unable to plead additional facts tying the registered subscriber to the alleged infringement, the scales may tilt towards implausibility.

*Id.* at 1211–12 (citations and footnote omitted); *Strike 3 Holdings, LLC v. Doe*, No.

19-723, 2019 WL 2996428, at *2–3 (N.D. Cal. July 9, 2019) (rejecting D.C. District

Court's opinion as "heavily criticized and rarely followed" and recognizing that "[w]hile it may turn out to be the case, as in *Cobbler Nevada*, that the IP address is insufficient to identify the infringer, circumstances might also differ:  the subscriber here might live alone and maintain exclusive access to the IP address, or might admit to infringing if asked, or might be able to identify some other person as the infringer"); *see Strike 3 Holdings, LLC v. Doe*, No. 19-10252, 2020 WL 5525549, at *4 (D.N.J. Sept. 14, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *3–4 (D.N.J. Sept. 30, 2019); *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481 (E.D. Pa. 2019) (declining to adopt D.C. District Court's reasoning, noting that "other district courts, both within and outside this district, have similarly rejected that decision" because "Strike 3 has pleaded a plausible claim for copyright infringement" and "[t]here is nothing before us at this time to suggest that Strike 3 is doing anything other than taking the proper steps to enforce what it deems to be valid copyrights").

In other words, where a plaintiff obtains the name and address of the subscriber but is unable to use that information to make further allegations of the "personal involvement" of that individual (or someone else) in the infringement, the claim should be dismissed.  *See Malibu Media, LLC v. Duncan*, No. 19-2314, 2020 WL 567105, at *6 (S.D. Tex. Feb. 4, 2020).  However, after obtaining a subscriber's identity a plaintiff can state a *prima facie* case of infringement against a specific

defendant by alleging additional evidence, such as social media activity, to "sufficiently connect[ a] Defendant personally with evidence of BitTorrent use traced to the subject IP address." *Malibu Media, LLC v. Rahusen*, No. 14-6976, 2015 WL 2231853, *4 (D.N.J. May 11, 2015) (denying motion to dismiss); *see Strike 3 Holdings, LLC v. Doe*, No. 21-3702, D.E. 29 at *1 n.1 (E.D. Pa. Apr. 22, 2022) (same); *Strike 3 Holdings, LLC v. Doe*, No. 20-960, D.E. 39 (E.D. Va. June 21, 2021) (same).

An illustration of this principle can be found in the bookend 2018 *and* 2019 decisions—both in the same case—issued by the Hon. Sara L. Ellis, U.S.D.J., of the United States District Court for the Northern District of Illinois. In 2018, Judge Ellis granted a motion to dismiss an amended complaint—without prejudice—in a BitTorrent matter based on the plaintiff's failure to satisfy *Cobbler Nevada* where, after obtaining the subscriber's identity, the plaintiff's amended pleading merely alleged that the subscriber lived alone. *Malibu Media, LLC v. Doe*, No. 18-450, 2018 WL 6446404, at *3 (N.D. Ill. Dec. 10, 2018). Thereafter, the plaintiff filed a second amended complaint, alleging additional connections to further identify the subscriber as the infringer, which Judge Ellis found to be sufficient under *Cobbler Nevada*. *Malibu Media, LLC v. Doe*, No. 18-450, 2019 WL 8301066, at *2 (N.D. Ill. June 5, 2019) (denying motion to dismiss).

The same principle, of course, applies when a Court must determine whether a *prima face* claim of infringement has been made by a party seeking entry of default judgment.  As this Court and others have recognized, where a plaintiff provides nothing but the mere allegation that the defendant is the IP address subscriber *after* obtaining early discovery, default judgment may be denied.[7]  However, where a plaintiff provides additional allegations that personally tie the defendant to the infringement (while also satisfying the other criteria required by Fed. R. Civ. P. 55), courts have recognized that entry of default judgment is proper.[8]

In this matter, Judge Wettre permitted limited early discovery to identify the subscriber in this matter.  D.E. 5.  When the ISP responded to the court-authorized

---

[7] *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 18-1369, 2020 WL 4719219, at *4 (D. Conn. Aug. 13, 2020) (denying default judgment, without prejudice, where plaintiff failed to allege "any additional facts to make it plausible to conclude that it was Doe—rather than other persons—who was responsible for the infringing activity."); *Malibu Media, LLC v. Peled*, No. 18-141, 2020 WL 831072 (D.N.J. Feb. 20, 2020) (same); *Malibu Media, LLC v. Park*, No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019) (same).

[8] *See, e.g.*, *Strike 3 Holdings, LLC v. Gray*, No. 20-5122, 2022 WL 952728, at *3 (E.D. Pa. Mar. 30, 2022); *Strike 3 Holdings, LLC v. Wise*, No. 20-942, 2022 WL 393594, at *2 (C.D. Cal. Feb. 7, 2022); *Vokoun*, 2022 WL 310201 at *3 (Hillman, J.); *Strike 3 Holdings, LLC v. Doe*, No. 20-14329, D.E. 28 (D.N.J. Dec. 17, 2021) (Neals, J.); *Strike 3 Holdings, LLC v. Poluk*, No. 20-2146, 2021 WL 5321824, at *3 (E.D. Cal. Nov. 16, 2021), *report and rec. adopted*, 2022 WL 224020 (E.D. Cal. Jan. 25, 2022); *Strike 3 Holdings, LLC v. Andaya*, No. 21-760, 2021 WL 5123643, at *4 (N.D. Cal. Nov. 4, 2021), *report and rec. adopted*, 2021 WL 5908421 (N.D. Cal. Dec. 14, 2021); *Malibu Media, LLC v. Mantilla*, No. 18-1369, 2020 WL 6866678, *2, 4 (D. Conn. Nov. 20, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 18-12605, D.E. 17 (D.N.J. May 14, 2019) (Martinotti, J.); *Flanagan*, 2014 WL 2957701 at *1–2.

subpoena, it did not identify the subscriber as "a coffee shop, a public library, or, as in *Cobbler Nevada*, a residential facility where numerous users access the same Internet service." *Strike 3*, 964 F.3d at 1212. Rather, the ISP identified the subscriber as Defendant and provided a residential address in New Providence, New Jersey (showing that the Maxmind geolocation service had accurately identified both the ISP that assigned the IP address and the town where it was assigned).[9] *See* D.E. 1-1 (identifying Defendant's approximate location as New Providence, New Jersey).

---

[9] Plaintiff relies on Maxmind's geolocation service so that Plaintiff can (1) identify the correct ISP to serve with the initial subpoena in this matter, and (2) identify the approximate location of the defendant,to ensure that it is filing suit in a court with personal jurisdiction over the defendant. *See, e.g.*, *SBO Pictures, Inc. v. Does 1-20*, No. 12-3925, 2012 WL 2304253, at *1 n.10 (S.D.N.Y. June 18, 2012) (using Maxmind); *Cell Film Holdings, LLC v. Doe*, No. 16-2584, 2016 WL 6523432, at *2 n.2 (S.D. Cal. Nov. 3, 2016) (same); *Criminal Prods., Inc. v. Doe*, No. 16-2589, 2016 WL 6822186, at *3 (S.D. Cal. Nov. 18, 2016). Federal law enforcement also relies on Maxmind for its cyber investigations. *See e.g.*, *U.S. v. Tillotson*, No. 08-33, 2008 WL 5140773, at *6 (E.D. Tenn. Dec. 2, 2008) (Dept. of Justice); *U.S. v. Richardson*, No. 11-3116, 2012 WL 10382, at *2 (D. Neb. Jan. 3, 2012), *report and rec. adopted*, No. 11-3116, 2012 WL 395509 (D. Neb. Feb. 7, 2012) (Federal Bureau of Investigation). However, once the ISP responds to the court-authorized subpoena and identifies the subscriber (confirming that geolocation information was accurate or not), the relevance of the Maxmind geolocation information is reduced because it is replaced by the concrete facts revealed by the subpoena, *i.e.*, that the ISP has relevant records (or does not) and the defendant resides within the Court's jurisdiction (or does not). *See generally Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (citation omitted).

Plaintiff did not reflexively amend its complaint to proceed against the subscriber, but instead investigated the ISP's response, evidence of third-party works that were downloaded and distributed *via* BitTorrent during the period of infringement using the same IP address, and publicly available social media of the subscriber as well as others that Plaintiff determined likely had access to the IP address.  Based on that evidence, Plaintiff determined that Defendant is the infringer based on, among other things, matches between Defendant's publicly stated interests in various sports media and adult performers and related files that were downloaded and distributed using the same IP address during the period of infringement.  D.E. 8 & 9 at ¶¶ 47–55.  As such, the First Amended Complaint personally connects Defendant with the infringement, beyond his mere association with the IP address, and therefore states a *prime facie* case of infringement specifically against Defendant.

## V.    THE *CHAMBERLAIN* FACTORS FAVOR DEFAULT JUDGMENT

In addition to stating a *prima facie* case of infringement specifically against Defendant, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable

17

conduct."[10]  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  *Cf.*

*Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d

Cir. 1990) ("When a defendant fails to appear and perhaps under other circumstances

covered by Rule 55, the district court or its clerk is authorized to enter a default

judgment based solely on the fact that the default has occurred.").  All of these

factors weigh in favor of granting default judgment.

First, Plaintiff will be prejudiced if default judgment is denied.  "Plaintiff

would be prejudiced if default judgment were not entered in its favor because this

suit is its only way to enforce its copyright.  *Vokoun*, 2022 WL 310201 at *4 (citing

*U.S. v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016)).  Plaintiff

simply has "no other means of obtaining relief" other than this lawsuit.  *Tsao*, 2016

WL 3450815 at *4.  And while "[d]elay in realizing satisfaction on a claim rarely

serves to establish the degree of prejudice sufficient to prevent the *opening* [of] a

default judgment entered at an early stage of the proceeding," *Feliciano v. Reliant*

---

[10] The Third Circuit sometimes includes a fourth factor: "the effectiveness of
alternative sanctions." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.
1987); *see Wahab v. New Jersey Dep't of Env't Prot.*, No. 12-6613, 2017 WL
4790387, at *2 n.1 (D.N.J. Oct. 24, 2017) (noting "[t]his last factor is not always
considered by the Third Circuit").  To the extent this factor applies, it weighs in favor
of entry of default judgment because Defendant's refusal to participate in this matter
or offer any defense whatsoever demonstrates that no other sanctions are
appropriate.  *See Nat'l Specialty Ins. Co. v. Papa*, No. 11-2798, 2012 WL 868944,
at *6 (D.N.J. Mar. 14, 2012); *Atl. Recording Corp. v. Pancrazio*, No. 06-5572, 2007
WL 3036744, at *2 (D.N.J. Oct. 16, 2007).

*Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982) (emphasis added), courts routinely recognize that, when considering whether to *grant* the unopposed entry of default judgment, a defendant's refusal to participate in their own defense—causing delays that may "stretch on indefinitely"—constitutes sufficient prejudice to justify the entry of default judgment. *Malibu Media, LLC v. Cui*, No. 13-5897, 2014 WL 5410170, at *2 (E.D. Pa. Oct. 24, 2014); *Brickhouse*, 2019 WL 4061754 at *1; *Vo*, 2016 WL 475313 at *3. *Cf. Malibu Media, LLC v. Waller*, No. 15-3002, 2016 WL 184422, at *4 (D.N.J. Jan. 15, 2016) (vacating default after defendant appeared to defend). Plaintiff has been prejudiced by Defendant's default because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011).

In addition, prejudice is found where "a plaintiff's ability to pursue the claim has been hindered by, for example, loss of available evidence." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. Appx. 519, 523–24 (3d Cir. 2006) (citing *Feliciano*, 691 F.2d at 657). The indefinite delay created by Defendant's refusal to defend this claim will result in discoverable evidence becoming lost or destroyed. *See De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-06415, 2013 WL 6070037, at *4 (D.N.J. Nov. 18, 2013). "As time goes on, memories fade and witnesses may become unavailable, irrevocably impeding the

19

discovery process." *In re Universal Health Servs., Inc., Derivative Litig.*, No. 17-2187, 2018 WL 8758704, at *1 (E.D. Pa. Dec. 10, 2018) (citation omitted). Here, in addition to fading memories,[11] electronic data is clearly at risk of being deleted, destroyed, or even being automatically overwritten.

Second, Defendant does not have a meritorious defense. The determination of whether a meritorious defense might be present must be made on the record before the Court,[12] and while there are "a number of meritorious defenses that defendants *may* assert" in BitTorrent matters, "[t]hose defenses . . . largely depend on the facts of the case and require knowledge specific to the defendant." *Malibu Media, LLC v. Nowobilski*, No. 15-2250, 2016 WL 4059651, at *4 (D.N.J. July 26, 2016) (emphasis added), *judgment vacated based on settlement*, 2018 WL 3007923 (D.N.J. Mar. 8, 2018). Thus, until Defendant appears and provides facts to support any defenses he might have, the Court "cannot simply speculate that there may be facts

---

[11] In a recent decision in the Western District of Washington, Plaintiff dismissed its claim against a subscriber after learning that the subscriber resided with his adult son, and that the subscriber and his son had *identical* names, lived at the *same* address, and used the *same* IP address and the *same* BitTorrent program. *See* No. 17-1731, D.E. 179 at ¶¶ 9–14; D.E. 180 at Ex. C. During discovery of the subscriber's counterclaim for non-infringement, the subscriber's son admitted to downloading adult works with BitTorrent using the defendant's IP address but could not remember "offhand"—years later—whether they were Plaintiff's works. No. 17-1731, D.E. 180 at Ex. A (T78:2 to 79:5).

[12] *See Jackson Hewitt, Inc. v. Dupree-Roberts*, No. 13-388, 2013 WL 4039021, at *6 (D.N.J. Aug. 7, 2013); *Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at *6 (D.N.J. May 17, 2011); *GP Acoustics, Inc. v. Brandnamez, LLC*, No. 10-539, 2010 WL 3271726, at *4 (D.N.J. Aug. 17, 2010).

that a defendant could use to defend himself from this complaint," for example, that a defendant might claim "that someone else in the household (or for that matter someone pirating wireless service) is the actual infringer." *Id.* at \*4–5; *see Vokoun*, 2022 WL 310201 at \*4 ("Because Defendant did not respond, the Court cannot determine whether Defendant had any meritorious defenses.") (citation omitted); *see also Schmidt*, 770 F.3d at 251 ("[A] plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense.") (citing *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 277); *Malibu Media, LLC v. Ramiscal*, No. 14-7517, 2016 WL 8698533, at \*4 (D.N.J. Feb. 19, 2016); *Flanagan*, 2014 WL 2957701 at \*3.

Indeed, even where a Defendant appears and seeks to vacate default, "[t]he standard to establish a meritorious defense is more stringent than merely alleging a defense." *Hersey v. Glob. ATM, Inc.*, No. 06-2451, 2007 WL 1147056, at \*2 (D.N.J. Apr. 18, 2007) (citing *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)). "[C]onclusionary language" is insufficient to establish a meritorious defense because crediting mere "ambiguous conclusions"—such as the speculation that "someone else might have done it"—would make the entry of default judgment impossible, not just in BitTorrent matters, but in *any* lawsuit. *See U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

Instead, a meritorious defense must be based on "alleged specific facts beyond simple denials or conclusionary statements." *Id.* (collecting cases). Accordingly,

21

courts have vacated default in BitTorrent matters where a defendant appears and, "[r]ather than offering a simple denial, [the defendant] . . . present[s] a meritorious defense and a factual scenario that may be developed in discovery." *Malibu Media, LLC v. Dhainy*, No. 15-3042, 2016 WL 1337275, at *3 (D.N.J. Apr. 5, 2016).  In contrast, default judgment is proper where there is a "good faith basis for naming the particular individual" as the infringer and the defendant "could have responded with a denial, but defaulted instead." *Nowobilski*, 2016 WL 4059651, at *5.

Finally, "Defendant's failure to respond demonstrates culpability in its default." *Vokoun*, 2022 WL 310201 at *4 (citing *Slover v. Live Universe, Inc.*, No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009)).

> [Defendant's] failure or refusal to engage[] in the litigation process and [to] offer[] no reason for this failure or refusal may qualif[y] as culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative.

*Cui*, 2014 WL 5410170 at *2; *see Nowobilski*, 2016 WL 4059651 at *5; *Tsao*, 2016 WL 3450815 at *4.  Moreover, the Third Circuit has recognized that "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." *Starlight Ballroom*, 175 Fed. Appx. at 523. Defendant was not only served with the Summons and First Amended Complaint, D.E. 12 & 13; but with a copy of the ISP subpoena and Judge Wettre's Order, D.E. 5; Plaintiff's request for entry of default, D.E. 14 & 15; a March 16, 2022 letter

22

warning Defendant that Plaintiff would seeking default judgment if he did not file an Answer or otherwise respond to the First Amended Complaint, Atkin Cert. at ¶ 12, Ex. A; and this motion. "This is the kind of reckless disregard for repeated communications regarding a suit that establishes a defendant's culpability." *Starlight Ballroom*, 175 Fed. Appx. at 523.

## VI.    PLAINTIFF IS ENTITLED TO APPROPRIATE RELIEF

### A.    Permanent Injunctive Relief.

The Copyright Act permits this Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a).   Courts routinely hold that injunctions are appropriate against defendants who have engaged in unlawful downloads to ensure the misconduct does not recur. *See Gray*, 2022 WL 952728 at *4; *Vokoun*, 2022 WL 310201 at *5; *Tsao*, 2016 WL 3450815 at *5; *Flanagan*, 2014 WL 2957701 at *5; *Virgin Records Am., Inc. v. Bagan*, No. 08-4694, 2009 WL 2170153, at *5 (D.N.J. July 21, 2009). The factors courts consider are:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 236–37 (3d Cir. 2003) (citation omitted); *see also Matos*, 133 F. Supp. 3d at 689–90. "The Court may issue a

permanent injunction in the context of a default judgment where these requirements are met." *Howard v. Laws*, No. 13-957, 2014 WL 3925536, at *8 (D.N.J. Aug. 12, 2014).

First, although Defendant's default prevents the Court from reaching the merits, Plaintiff has plead sufficient facts to support a default judgment and, therefore, has shown success on the merits. *Flanagan*, 2014 WL 2957701 at *5. Second, Plaintiff will suffer irreparable harm if an injunction is not granted, since nothing will prevent Defendant from continuing to infringe on Plaintiff's copyrighted works by distributing them to others using the BitTorrent protocol. *Id.*; *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 543 (E.D. Pa. 2008) ("[I]n the context of copyright law, a plaintiff who establishes a *prima facie* case of copyright infringement is entitled to a presumption of irreparable harm."); *see Vokoun*, 2022 WL 310201 at *5 ("[T]here exists a significant risk that defendant may continue to unlawfully access programming without repercussion, quite literally causing [Plaintiff] irreparable injury.") (citation omitted); *Strike 3 Holdings, LLC v. Doe*, No. 18-1173, 2019 WL 1277561, at *7 (N.D. Cal. Mar. 20, 2019) ("[D]ue to the nature of BitTorrent, tracing the extent and magnitude of the damage is impossible."). Third, an injunction will not prejudice Defendant; it will only prohibit him from continuing to infringe Plaintiff's copyrighted works and require him to destroy his unauthorized copies. *See* 17

U.S.C. § 503(b); *Vokoun*, 2022 WL 310201 at *5; *Flanagan*, 2014 WL 2957701 at *5. Finally, the prevention of copyright infringement serves the public interest. *See Vokoun*, 2022 WL 310201 at *5; *see also TD Bank N.A. v. Hill*, 928 F.3d 259, 285 (3d Cir. 2019) ("By recognizing the public's interest in accessing intriguing works, we do not countenance blatant piracy or indulge in second-guessing of a copyright holder's business model."); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983); *Virgin Recs. Am., Inc. v. Bagan*, No. 08-4694, 2009 WL 2170153, at *5 (D.N.J. July 21, 2009) (acknowledging the public interest in preserving the integrity of the copyright laws).

## B.   Minimum Statutory Damages Per Infringed Work.

The Copyright Act permits a plaintiff to elect statutory damages, rather than actual damages. 17 U.S.C. § 504(a)(2), (c)(1). An award of statutory damages may be recovered between $750 and $30,000 for each work infringed "as the court considers just." *Id.* at § 504(c)(1). All of the works are eligible for statutory damages. *Id.* at § 412; *see* D.E. 8 & 9 at ¶¶ 2, 4, 45; D.E. 8-1 & 9-1 (listing registration and publication date for each work); *Gray*, 2022 WL 952728 at *5–6 (granting default judgment and awarding separate statutory damages for each of Plaintiff's works because they were published separately). "[W]hen liability is established through default judgment rather than the merits, courts routinely award the minimum statutory damages amount." *Tsao*, 2016 WL 3450815, at *4 (citing

cases); *see Warner Bros. Records Inc. v. Gullfoyle*, No. 06-1238, 2007 WL 835421, at *2 (D.N.J. Mar. 14, 2007) (holding no proof hearing required to award minimum statutory damages in default judgment). Here, the minimum statutory award will serve the "dual purpose of punishing and deterring the infringer while compensating the copyright holder for the infringement." *Tsao*, 2016 WL 3450815, at *4. "In this context where Plaintiff is asking for the minimum amount it could be awarded as statutory damages, the Court [should] find[] that such an award would be just." *Vokoun*, 2022 WL 310201 at *4. Accordingly, Plaintiff respectfully requests that the Court award it damages in the amount of $18,750, representing the minimum $750 statutory award for each of the 25 copyrighted works Defendant infringed.

### C.  Statutory Filing Fee and Service Costs.

In any civil action under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. Plaintiff requests that the Court allow it to recover (1) the cost of the statutory filing and administrative fees for this suit, in the amount of $402, and (2) the cost of service, in the amount of $105, for a total cost award of $507. Atkin Cert. at ¶¶ 18–19, Ex. B; *see Vokoun*, 2022 WL 310201 at *5 (finding statutory filing fees and service fees are reasonable costs to award when entering default judgment); *Warner Bros. Records Inc. v. Novak*, No. 06-5342, 2007 WL 1381748, at *3 (D.N.J. May 9, 2007) (same).

## VII. THE COURT SHOULD UNSEAL DOCUMENTS AND IDENTIFY DEFENDANT IN THE JUDGMENT

Plaintiff previously requested that the Court enter a protective order in this matter, D.E. 5-1 at 21–24, and when the Court declined to do so, D.E. 7, Plaintiff voluntarily filed all documents identifying Defendant under temporary seal. *See* L. Civ. R. 5.3(c); *Strike 3 Holdings, LLC v. Doe*, No. 20-20170, D.E. 6 at 4-5 n.1 (D.N.J. Apr. 20, 2021) (Williams, J.) (granting expedited discovery but denying request for protective order and noting that Plaintiff should nevertheless "proceed with the level of caution it has recognized as appropriate in these cases"). In a further showing of good faith, Plaintiff has filed documents associated with this motion under temporary seal, since it is possible Defendant may still appear to defend and seek to make a sufficient showing justify permanent sealing under L. Civ. R. 5.3(c).[13] *See generally* Fed. R. Civ. P. 10(a) ("The title of the complaint must

---

[13] Plaintiff has not filed a motion to permanently seal documents in this matter because a recent decision has held that such a motion generally requires the Defendant to appear and make a sufficient showing that such relief is justified. *Compare Strike 3 Holdings, LLC v. Doe*, No. 20-14321, 2021 WL 7286225 (D.N.J. Dec. 22, 2021) (Donio, J.) (denying request to seal documents based on Plaintiff's interest alone but leaving open possibility the defendant could appear and make sufficient showing), *default judgment granted sub nom.*, *Strike 3 Holdings, LLC v. Vokoun*, 2022 WL 310201 (D.N.J. Feb. 2, 2022) (Hillman, J.) (granting default judgment and identifying defendant and unsealing documents) *with Strike 3 Holdings, LLC v. Doe*, No. 21-3702, 2022 WL 1214170 (E.D. Pa. Apr. 25, 2022) (granting consent motion to seal documents identifying defendant based on defendant's privacy interest after claim was resolved); *see also* L. Civ. P. 83.2(b) ("Unless otherwise stated, any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice.").

name all the parties"); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672–73 (3d Cir. 2019) (setting forth standard to permanently seal "judicial documents"); *Doe v. Megless*, 654 F.3d 404, 408–09 (3d Cir. 2011) (setting forth factors to consider when determining whether to permit a party to proceed under pseudonym).

However, in the event Defendant does not appear to defend this matter and seek to seal documents, and the Court grants default judgment, Plaintiff respectfully submits that the Court should also unseal documents in this matter and identify Defendant by name and address so that Plaintiff may enforce the judgment. *See Strike 3 Holdings, LLC v. Gray*, No. 20-5122, D.E. 24, 25 (E.D. Pa. Apr. 6, 2022) (amending default judgment to identify defendant and unseal documents).

## CONCLUSION

For the foregoing reasons, Plaintiff Strike 3 Holdings, LLC respectfully requests this Court enter default judgment against Defendant.

DATED: May 6, 2022                    Respectfully submitted,

                                                          **THE ATKIN FIRM, LLC**

                                                          *Attorneys for Plaintiff,*
                                                          *Strike 3 Holdings, LLC*

                                                          By:     */s/ John C. Atkin, Esq.*
                                                                      JOHN C. ATKIN